IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HARD-ING BUILDERS, LLC;<br>VISION QUALITY HOMEBUILDERS,<br>LLC; VISION QUALITY HOMES,<br>LLC; et al., | § § § § § | |
| **Plaintiffs,** | § § | **3:07-cv-1069-MEF** |
| v. | § § | |
| CITY OF PHENIX CITY, ALABAMA,<br>a Municipal Corporation, | § § § | |
| **Defendant.** | § | |

## RESPONSE TO MOTION TO REMAND

COMES NOW Defendant, City of Phenix City, Alabama (hereinafter "Defendant" or "the City"), by and through counsel of record, and moves this Honorable Court to deny Plaintiff's motion to remand and in support thereof shows as follows:

### I.    BRIEF INTRODUCTION/PROCEDURAL NARRATIVE

On November 6, 2007, Plaintiffs filed this action in the Circuit Court of Russell County, Alabama for reimbursement of certain sewer tap fees. (See Compl.). Plaintiffs are builders, contractors and developers (hereinafter "builders") who were, allegedly, assessed sewer tap fees by the City prior to April 17, 2007. (Id. at ¶ 33). Plaintiffs were assessed said fees pursuant to Ordinance No. 2006-26 which was repealed, in part, on April 17, 2007. (See Compl. at ¶ 33, and Ex. "A").[1] Plaintiffs now argue that Ordinance No. 2006-26 was unconstitutional, and, as such, they are due to be reimbursed for those fees paid before the Ordinance was repealed. (Id. at ¶ 55).

---

[1] Sewer tap fees were assessed for many years prior to April 17, 2007. A copy of Ordinance No. 2006-26 is attached as Ex. "A" showing the fee as it existed prior to being repealed. (Id.)

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violations of their constitutionally protected rights under the Fourteenth (14th) and Fifth (5th) Amendments to the United States Constitution as well as Ala. Code § 18-1A-32, Ala. Code § 6-6-220 (the Alabama Declaratory Judgment Act) and sections 223 and 235 of the Alabama Constitution. (See Compl. at ¶¶ 38-55).

On December 7, 2007, the City removed this action pursuant to 28 U.S.C § 1446(a) arguing that this Court has federal question jurisdiction pursuant to 28 U.S.C § 1331. (See Notice of Removal). On January 28, 2008, Plaintiffs filed a motion to remand arguing that the Court is precluded from exercising federal question jurisdiction pursuant to the Tax Injunction Act of 1937, 28 U.S.C § 1341 (the "TIA"). (See Motion to Remand at p. 2).

Plaintiffs have misconstrued the application of the TIA. This Court has federal question jurisdiction to hear this § 1983 action.

## II.     SUMMARY OF FACTS

Prior to April 17, 2007, the Department of Public Utilities for the City of Phenix City, Alabama (hereinafter "the Department") collected a $500.00 sewer tap fee from all builders who petitioned the Department to add new sanitary sewer lines to the existing sewer system in furtherance of constructing new buildings. (See Ex. "A"). The Department collected two (2) fees from each builder who wished to tie into the existing system; (1) an impact/"system development" fee -- revenue from which is utilized to repair, maintain and expand the system as impacted by growth and additional load, and (2) a "sewer tap fee" -- revenue from which was utilized to offset costs incurred by the Department, including

2

inspecting new additions to the system to ensure the additions were constructed appropriately in a workmanlike manner.[2]  (Id.)

On April 17, 2007, in response to complaints made by builders subsequent to an increase in impact fees, the City Counsel for Phenix City enacted Ordinance No. 2007-19 repealing the sewer tap fee in certain situations where the builder connected new lines into the existing system.  (See Ex. "B").  The fees were repealed in order to ease the financial burden on builders subsequent to the impact fee being increased.  (See Ex. "D").  Plaintiffs have now sued the City for reimbursement of those fees paid before Ordinance No. 2007-19 was enacted.  (See Compl.).

It is undisputed that the Department is a completely separate entity from the City. (See Ex. "C").  The Department operates from a completely distinct source of funds which are maintained in a separate bank account from the City.  (Id.)  The Department's budget is funded by water and sewer fees charged to its customers and/or revenue bonds.  (Id.)  The utility department does not receive any tax revenue from the City and (as a separate entity) is currently responsible for paying taxes to the City like any other utility.  (Id.)  Funds collected by the Department are not co-mingled with funds held by the City as part of its general operating budget.  (Id.)

Moreover, the Department has its own employees and manager and is responsible for operating and managing the sewer system in the area encompassing Phenix City and the surrounding areas.  (Id.)  The Department's jurisdiction does not coincide with the city limits of Phenix City, or its police jurisdiction; as such, the Department serves a number of customers who are not Phenix City residents.  (Id.)

---

[2]  Plaintiffs do not challenge the constitutionality of the impact fee.  (See Compl.).

The sewer tap fees in question were collected by Department employees and were deposited into the Department's operating account to be utilized for the specific purpose of inspecting and maintaining the sewer system. (See Ex. "D"). The fees were levied only against those builders who tied into the existing system for the specific purpose of offsetting/defraying those costs incurred by the Department including inspecting the work performed by the builders. (Id.)

### III.    ARGUMENT

In support of their motion to remand, Plaintiffs argue that The Tax Injunction Act of 1937, 28 U.S.C § 1341 precludes the Court from exercising subject matter jurisdiction over this action because the sewer tap fees are "taxes" for purposes of the TIA. (See Motion to Remand). Plaintiffs' allegation in this regard is simply unfounded as the fees in question are not taxes. The Court has federal question jurisdiction over this action.

The TIA reads as follows:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Id. In order to determine whether the TIA divests a district court of jurisdiction over an action, a court must decide whether the assessment in question is a "tax" within the meaning of the TIA. Mobil Oil Corp. v. Tully, 639 F. 2d 912, 917 (2nd Cir. 1981). If the assessment is not deemed to be a tax, the TIA does not apply to preclude federal question jurisdiction. Id. Importantly, the definition of the term "tax" is a question of federal law. See Wright v. McClain, 835 F.2d 143, 144 (6th Cir. 1987) (citing Robinson v. Protective Alarm Co., 581 F.2d 371, 374 (3rd Cir. 1978)).

In the classic sense, a tax for purposes of the TIA is defined as an assessment imposed by a legislative body upon many, or all, citizens and is utilized to raise money which is contributed to a general fund and spent for the benefit of the entire community. See Bidart Bros. v. California Apple Comm'n, 73 F.3d 925, 930 (9th Cir. 1996); National Cable Television Ass'n v. United States, 415 U.S. 336, 340-41 (1974) and San Juan Cellular Tel. Co. v. PSC, 967 F.2d 683 (1st Cir. 1992). The primary purpose of a tax is to raise money. See Miami Herald Pub. Co. v. Hallandale, 734 F.2d 666 (11th Cir. 1984). The classic regulatory fee, on the other hand, is imposed by an agency upon those subject to its regulation. See New England Power Co. v. U.S. Nuclear Regulatory Commission, 683 F.2d 12, 14 (1st Cir. 1982).

A fee may serve regulatory purposes *directly* by deliberately discouraging particular conduct by making it more expensive; see, e.g., South Carolina ex rel. Tindal v. Block, 717 F.2d 874, 887 (4th Cir. 1983), or, it may serve such purposes *indirectly* by raising money placed in a special fund to help defray the agency's regulation-related expenses. See, e.g., Union Pacific Railroad Co. v. Public Utility Commission, 899 F.2d 854, 856 (9th Cir. 1990); In re Justices of the Supreme Court of Puerto Rico, 695 F.2d 17, 26 (1st Cir. 1982); and National Cable, supra. at 343. The sewer tap fee in question falls within the latter distinction.

The primary purpose of a regulatory fee is to provide funds to manage or control different aspects of the regulation, or, to recover costs incurred in enforcing the regulation. See Mobile Oil Corp., supra. at 918; Hallandale, supra. at 671; and Henderson v. Stalder, 407 F.3d 351 (5th Cir. 2005). Succinctly stated,

5

The classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

Id. citing Home Builders Ass'n of Miss. Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).[3]

Courts facing cases that lie near the middle the spectrum have emphasized as a determining factor the assessment's ultimate use, whether it provides a general benefit to the public -- of a sort often financed by a general tax -- or, whether it provides more narrow benefits to regulated companies or defrays an agency's costs of regulation. See Bidart, supra. at 930. Assessments will not be deemed taxes if the general public is only indirectly benefited; assessments that are not critical to general state functions are more likely deemed fees. Id.

## A.    THE SEWER TAP FEE IN QUESTION IS NOT A TAX FOR PURPOSES OF THE TIA.

### a.    The Sewer Tap Fee in Question is not Deemed a Tax Because it was Collected, Maintained and Distributed by the Department.

As discussed above, a fee is more likely to be deemed a "tax" if it is imposed by a legislature upon many, or all, citizens, or if it raises money, contributed to a general fund, and is spent for the benefit of the entire community. See McLeod v. Columbia County, 254 F. Supp. 2d 1340, 1345 (D. Ga. 2003). Regulatory fees, on the other hand, are typically imposed by an agency upon those subject to its regulation. See San Juan

---

[3] Courts have applied three (3) factors/questions in interpreting the above stated principles; Courts ask (1) who imposed the assessment; (2) who is assessed the fee; and (3) whom does the revenue benefit. See San Juan Cellular Tel. Co. v. Public Serv. Comm'n, 967 F.2d 683, 685 (1st Cir. 1992); National Cable Television Ass'n v. United States, 415 U.S. 336 (1974); and Bidart Bros. v. California Apple Comm'n, 73 F.3d 925, 931 (9th Cir. 1996).

<u>Cellular</u>, <u>supra</u>. at 685. "A classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates." <u>See</u> <u>City of Madison, Miss.</u>, <u>supra</u>. at 1010.

The sewer tap fee in question is not a tax for a number of reasons. First and foremost, it is undisputed that the Department is not a legislative body and that it is a separate and distinct entity from the City of Phenix City. (<u>See</u> Ex. "C"). The Department has the responsibility of inspecting, maintaining and managing the sewer and water systems within its own specific jurisdiction and, as such, serves customers who are located outside of Phenix City and its police jurisdiction. (<u>See</u> Ex. "D"). The Department has its own employees and management (separate from the City) and has responsibility for maintaining its own budget. (<u>See</u> Ex. "C"). The fees in question were imposed by the Department upon builders for the specific regulatory purpose of ensuring that those builders who added new sewer lines to the existing system did so in a workmanlike manner. (<u>See</u> Ex. "D").

Moreover, while the fees in question were adopted by the City Council (a legislative authority), the City had no involvement whatsoever in collecting, managing or distributing the fees. (<u>Id</u>.) The Department operates from its own funds and the funds are not placed within the City's general operating fund. (See Ex. "C"). The sewer tap fees in question were collected, maintained and allocated by the Department for the specific purpose of offsetting/defraying costs incurred in inspecting new sewer lines. (<u>See</u> Ex. "D"). The fees were not collected from the general public and/or distributed via a common fund for the benefit of the general public. (<u>See</u> Ex. "C").

Since the fees were (1) not collected, maintained or distributed by a legislative body, (2) not collected from the general citizenry, (3) not contributed to a general fund,

7

and (4) not utilized for the benefit the entire community, they are not deemed taxes for purposes of the TIA.

**b.**    <u>**The Sewer Fees in Question Were Assessed Only Against those Builders who were Responsible for Adding New Sewer Lines to the Existing System.**</u>

As discussed above, an assessment is more likely deemed a tax where it is designed to provide a benefit for the entire community. <u>See</u> <u>Home Builders Ass'n of Miss. Inc. v. City of Madison, Miss.</u>, 143 F.3d 1006, 1010 (5th Cir. 1998). The classic fee, however, is designed to raise money to help defray an agency's regulatory expenses. <u>Id</u>. and <u>National Cable</u>, <u>supra</u>, at 343.    Stated differently, an "assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." <u>See</u> <u>Bidart</u>, <u>supra</u>. at 931.

Here, the fees in question were not imposed upon a broad class. (<u>Id</u>.)    To the contrary, the fees were levied against a very narrow class of individuals: builders who stood to profit from adding new sewer lines to the existing system. (<u>See</u> Ex. "D").    The fees were collected for the narrow purpose of offsetting costs incurred by the Department in inspecting the work of the builders to ensure that new additions were being added in a workmanlike manner. (<u>Id</u>.)    The fee was narrowly tailored to avoid placing any burden on the general public who may or may not have an interest in the condition of the sewer system within the Department's jurisdiction.

Numerous Courts have determined that assessments are *not* deemed to be taxes where an agency has implemented the assessment in efforts to pass along costs of regulation *to those who are regulated.* <u>See</u> <u>Head Money Cases</u>, 112 U.S. 580 (1884) (Finding that a statutory levy on shipowners of $.50 per passenger was not a tax because the revenue was used "'to *defray* the expense of regulating immigration . . . for the care of immigrants . . .

8

and for the general purposes and expense of carrying th[e immigration] act into effect.'"); Union Pacific Railroad Co. v. Public Utility Commission, 899 F.2d 854, 856 (9th Cir. 1990); (Holding that a Public Utilities Commission's assessment was a "fee," not a "tax," because it helped "*defray* the cost of performing the regulatory duties imposed" on the Commission); Mississippi Power & Light Co. v. U.S. Nuclear Regulatory Commission, 601 F.2d 223, 228, 231-32 (5th Cir. 1979) (Holding that a Nuclear Regulatory Commission's charge was a "fee," not a tax, when it helped to pay the costs of "environmental reviews," "uncontested hearings," and "administrative and technical support" for licensing procedures); Schneider Transport, Inc. v. Cattanach, 657 F.2d 128 (7th Cir. 1981) (Commenting that a Wisconsin Department of Transportation charge upon trucks was a "fee," not a "tax," when the revenues raised by that particular charge helped pay for efforts to "identify authorized vehicles for regulatory purposes."); and South Carolina ex rel. Tindal v. Block, 717 F.2d 874 (4th Cir. 1983) (Finding a levy on milk sales which, in part, funded a milk price-support program was a regulatory fee).

The fees in question were collected by the Department (a separate and distinct agency from the City) from a very limited number of individuals (builders), for a specific regulatory purpose (ensuring that additions made to the sewer system are done so in a workmanlike manner) to defray costs of regulation. The fees are not "taxes" for purposes of the TIA as they were not assessed to a broad group of individuals for general government purposes.

**c.**    **The Sewer Fees in Question did not Affect the City's Flow of Revenue.**

"The classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme." See Home Builders Ass'n of Miss. Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998). It is undisputed that the Department does not receive tax revenue from the City. (See Ex. "C"). Indeed, the Department is responsible for paying taxes *to the City* like any other utility. (Id.) As such, the sewer tap fees collected by the Department were not utilized for the benefit of residents of Phenix City or, more generally, the public at large. (Id.)

Since the sewer tap fees were not included in the City's general operating fund, revenue generated therefrom did not affect the flow of tax revenue in and out of the City's (government's) coffers. (Id.) To the contrary, the fees were assessed to benefit the Department directly in carrying out its responsibility in ensuring that those builders who added sewer lines to the existing system did so appropriately. (See Ex. "D"). While the general public may have had an *indirect* interest in the Department's success in maintaining a sound sewer system, the fees were not assessed to serve the public directly or to fund any general public enterprise. (See Ex. "C"). Again, assessments are not deemed "taxes" if the general public is only indirectly benefited. See Bidart, supra. at 930.

Further, residents of the City were not the only individuals who had an indirect interest in the sewer system as the Department serves a number of customers who have absolutely no affiliation with the City. (Id.) While the City is certainly included within the Department's jurisdiction, the Department services a broad area outside the city limits as well as the limits of its police jurisdiction. (Id.) As such, Phenix City residents (the general

citizenry) were not the sole beneficiaries of the fees as levied by the Department.  (Id.) Since the fees in question were allocated in a manner which did not affect the general tax revenue of the City (for its residents) they may not be deemed "taxes" for purposes of the TIA.

## IV.    CONCLUSION

The sewer tap fee in question is not a "tax" for purposes of the TIA.  Specifically, the fees were imposed by a non-legislative body (the Department), upon a very narrow group of individuals (builders), for the purpose of offsetting/defraying the costs of regulating the builders themselves. While residents of the City may or may not have had an indirect interest in the functioning of the sewer system, the general public was not affected by the collection of the fees or the generation of revenue through collection of the fees.  The collection of fees did not impact the public by affecting the City's operating revenue. Moreover, importantly, since the Department's jurisdiction includes areas outside the city limits and police jurisdiction of the City, the fees were not applied solely for the benefit of Phenix City's residents (the general citizenry).

Since the sewer tap fees are not deemed taxes, the TIA does not apply to preclude this Court's jurisdiction.  Plaintiffs' motion to remand is due to be denied.

Respectfully submitted this the 12th day of February, 2008.

s/ Ronald G. Davenport
s/ R. Brett Garrett
RONALD G. DAVENPORT (DAV044)
R. BRETT GARRETT (GAR085)
Attorneys for Defendant City of Phenix City,
Alabama

11

Of Counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P. O. Box 270
Montgomery, AL 36101
334-206-3100 (phone)
334-481-0808 (fax)
rgd@rsjg.com (email)
bg@rsjg.com (email)

## CERTIFICATE OF SERVICE

     I hereby certify that on <u>February 12, 2008</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

     David R. Boyd, Esq.
     G. Lane Knight, Esq.
     BALCH & BINGHAM, LLP
     PO Box 78
     Montgomery, AL 36101-0078

     James R. McKoon, Jr., Esq.
     Joshua R. McKoon, Esq.
     MCKOON & ASSOCIATES
     PO Box 3220
     Phenix City, AL 36868-3220

     James P. Graham, Esq.
     THE GRAHAM LEGAL FIRM
     PO Box 3380
     Phenix City, AL 36868-3380

               *s/ R. Brett Garrett*
               OF COUNSEL

ORDINANCE NO. <u>2006-26</u>

AN ORDINANCE TO AMEND THE CODE OF ORDINANCES OF THE CITY OF PHENIX CITY, ALABAMA, CHAPTER 17, SECTION 17-17 AND SECTION 17-21, RELATING TO ESTABLISHMENT OF WATER RATES SCHEDULE AND PAYMENT OF BILLS.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF PHENIX CITY, ALABAMA, that the ordinances of the City of Phenix City, Alabama be amended to read as shown in Exhibit A attached hereto and incorporated herein by reference.

All ordinances or parts of ordinances in conflict herewith are hereby repealed.

If any part of the ordinance is declared unconstitutional, it should not automatically void the remaining sections.

PASSED, APPROVED and ADOPTED this 1st day of August, 2006.

_____
MAYOR

_____

_____

_____

_____
MEMBERS OF THE CITY COUNCIL OF THE
CITY OF PHENIX CITY, ALABAMA

ATTEST:

_____
CITY CLERK

EXHIBIT
A
Blumberg No. 5118

EXHIBIT "A"
### SCHEDULE OF WATER SERVICE RATES
### AND REGULATIONS OF
### THE CITY OF PHENIX CITY, ALABAMA

The following schedule of rates and regulations regarding the furnishing of water and sewer from the water system of the City is hereby established and declared to be effective June 1, 2002:

## METER RATES FOR WATER

Subject to the minimum charges herein after set forth, the following shall be the schedule of monthly charges for water furnished from the water system:

| Usage (in Gallons or fractions thereof per month) | | Rate per 1000 Gallons |
|---|---|---|
| First | 3,000 | $2.75 |
| Next | 12,000 | $2.60 |
| Next | 35,000 | $2.40 |
| Next | 100,000 | $2.05 |
| Next | 350,000 | $1.85 |
| Next | 500,000 | $1.75 |
| Next | 1,000,000 | $1.65 |

Minimum monthly water bill shall be $8.25

## WATER TAP FEES

Meter Size

| 3/4" | $350.00 |
|---|---|
| 1" | $450.00 |
| 1½" | $700.00 |
| 2" | $1,000.00 |
| 3" and above | Cost of material plus $1,500.00 labor |
| 6" (Metered or Unmetered Fire Line) | Cost of material plus $2,000.00 labor |

This rate shall be for service installation, complete, in place, including tapping charge and supply line from main to meter, where length of supply line does not exceed twelve (12) feet and where street crossing is not required.

If a street crossing is required and a bore or cut in pavement is required, an additional charge of $125.00 will be charged to the customer.

## SYSTEMS DEVELOPMENT FEES:  WATER

Subject to the minimum charges herein after set forth, the following shall be the schedule of monthly charges for water furnished from the water system.

| Meter Size | Capacity Factor | System Development Charge |
|------------|-----------------|---------------------------|
| ¾" | 1.0 | $ 1,250.00 |
| 1" | 1.7 | $ 2,125.00 |
| 1 ½" | 2.8 | $ 3,500.00 |
| 2" | 4.0 | $ 5,000.00 |
| 3" | 8.0 | $10,000.00 |
| 4" | 12.5 | $15,625.00 |

For meter sizes greater that 4" the price shall be determined through an analysis of projected needs for the customer involved.

## METER SET AND/OR METER PITS

In cases where, at the time when application for water service is made, the service installation has been completed with the exception of the metered setting or meter setting and pit, and supply lines has been installed to such extent that the meter can be set in the proper location, the charges for the completion of the service installation are:

|        | METER SET | METER PIT |
|--------|-----------|-----------|
| 3/4" | $80.00 | $20.00 |
| 1" | $100.00 | $20.00 |
| 1½" | $250.00 | $50.00 |
| 2" | $350.00 | $50.00 |
| 3" | $1,500.00 | $400.00 |
| 4" | $2,000.00 | $600.00 |
| 6" | $3,000.00 | $800.00 |
| 8" | $3,500.00 | $1,000.00 |
| 10" | $4,500.00 | $1,200.00 |

## CONNECTION FEE

Each new customer requesting water or sewer service from the water system (regardless of whether the premises to which service is to be furnished had been previously connected with the system), shall pay to the City a connection fee of sixty ($60.00) dollars to cover the cost of adding the customer to the system. Only one fee shall be charged if both water and sewer service is added at the same time. The "Connection Fee" shall not be refundable after the connection has been made. If an additional meter at the same premises is needed for a sprinkler system only, and if the service is added at the same time as the original service, an additional connection fee of thirty-five ($10.00) dollars shall be charged.

## GARBAGE SERVICE CONNECTION FEE

Customers adding Garbage Service at the same time as a water or sewer connection will not be charged a connection fee for the garbage service. Where a new customer receives Garbage Service only or when an existing water or sewer customer adds Garbage Service a connection fee of fifteen ($15.00) dollars will be charged. In the case of an existing water or sewer service customer the fee may be added to the next service billing or paid separately at the time the service is added, at the option of the customer.

## SPECIAL WATER SERVICE

Private Fire Protection

As consideration for the willingness of the City to provide standby water service for private fire protection, annual charges for provision of such services shall be as set forth herein below. Such charges shall be applicable where water is supplied to fire lines and/or sprinkler systems for fire protection purposes only, and under the following conditions:

(1)   The fire flow supply line is separate from any other water lines entering the establishment;

(2)   There are no cross-connections between fire protection and potable water system within the establishment;

(3)   The fire flow supply line entering the establishment is not metered, and;

(4)   An approved backflow preventer is installed in the fire flow supply line entering the establishment.

## BEAUTIFICATION PROJECTS IN SUBDIVISION COMMON AREAS

In common areas for beautification projects the water tap fee will be reduced one-half of the listed costs of each size meter and the breaking pavement charge will not be added to the cost of the tap if the following conditions are met:

(1)   The project must be located in an R-1 zone and placed in common areas of the subdivision and it must be for beautification projects only. Beatification shall mean any addition of shrubbery or grasses that require water on a continued basis for growth.

(2)   The tap application must be placed in the name of a responsible homeowner who agrees to be charged for the tap application fee, the deposit, the monthly water charges, and any additional charges incurred.

(3)   The application will list two (2) other homeowners in that subdivision who will be responsible for the payment of any future bills that might occur in case the original owner moves out of the subdivision.

## SECTION 17.18 - SANITARY SEWER CHARGES

a) <u>Sewage Usage:</u> The sewer usage fee shall be at a rate of $2.30 per thousand gallons, based on all water usage. A maximum residential customer usage charge will be applied at the threshold of 12,000 gallons per month. Once the customer uses this amount, excess charges will be waived. The minimum monthly sewer bill shall be $6.90 per month.

b) <u>Sewer Tap Fees:</u>

4" diameter          $500.00

All other taps will be based on the size of the water meter.

1" diameter          $750.00
1½" diameter        $1,000.00
2" diameter          $2,000.00

Costs associated for larger taps will be determined after a field investigation and shall include labor and materials.

(Plus $125.00 for breaking pavement).

Lease Rate

| | | |
|---|---|---|
| 6" fire flow connection | $86.00 | per year |
| 8" fire flow connection | $174.00 | per year |
| 10" fire flow connection | $296.00 | per year |
| 12" fire flow connection | $464.00 | per year |

c) <u>System Development Fees:</u>

4" Diameter                    $1,750.00

All other fees will be based on the size of the water meter.

| | |
|---|---|
| 1" Diameter | $2,625.00 |
| 1 ½" Diameter | $3,000.00 |
| 2" Diameter | $4,500.00 |

Cost associated with larger connections will be determined after a field investigation and shall include labor and materials.

(Plus $125.00 for breaking pavement).

| Meter Size | Capacity Factor | System Development Charge |
|---|---|---|
| ¾" | 1.0 | $ 1,500.00 |
| 1" | 1.7 | $ 2,550.00 |
| 1 ½" | 2.8 | $ 4,200.00 |
| 2" | 4.0 | $ 6,000.00 |
| 3" | 8.0 | $12,000.00 |
| 4" | 12.5 | $18,750.00 |

For meter sizes greater than 4" the price shall be determined through an analysis of projected needs for the customer involved.

## SECTION 17.21 - PAYMENT OF BILLS

All bills for water and sanitary sewer service shall be rendered monthly on the same statement. Payment for water and sewer shall not be accepted separately, but shall be accepted on the same statement. Each bill for water and sanitary sewer service shall be due when rendered, and delinquent twenty-one (21) days after due date. All bills not paid will be delivered to a service person with instructions to discontinue service. Upon discontinuance of service for non-payment of account, a minimum reconnection fee of ($60.00) dollars, in addition to the delinquent bill and all other fees previously charged, must be paid before service is re-established. All reconnects shall be made only during normal working hours and no cut-offs will be made on Friday, holidays, or the day before a holiday. If it has been necessary to discontinue the service, a ($60.00) reconnection fee will be required.

The following charges are applicable:

| | |
|---|---|
| Return Check Fee | $30.00 |
| Reconnection Fee | $60.00 |

These service charges will be assessed only if the problem is determined to be a plumbing malfunction on the customer's property.

The following charges are applicable:

| | |
|---|---|
| Newly constructed sanitary lines first time. | No charge |
| Each subsequent televising on an hourly basis. | $525.00 |
| Service calls during normal working hours. | $ 50.00 |
| Emergency service calls after hours | $ 75.00 |

ORDINANCE NO. _____2007-19_____

AN ORDINANCE TO AMEND THE CODE OF ORDINANCES OF THE CITY OF PHENIX CITY, ALABAMA, CHAPTER 17, SECTION 17.18.B- RELATING TO ESTABLISHMENT OF WATER RATES SCHEDULES.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF PHENIX CITY, ALABAMA, that Ordinance No. 2006-26, approved August 1, 2006 amending Code of Ordinances of the City of Phenix City, Alabama, Chapter 17, Section 17.18 - B relating to the establishment of water rates schedules – sewer tap fees be amended as follows:

## SECTION 17.18 - SANITARY SEWER CHARGES

b) <u>Sewer Tap Fees:</u>

4" diameter                $500.00

No charge shall be assessed against the developer/contractor in areas where pre-stubbed sanitary taps or connections have been made by the developer/contractor.

All other taps will be based on the size of the water meter.

1" diameter          $750.00
1½" diameter        $1,000.00
2" diameter          $2,000.00

Costs associated for larger taps will be determined after a field investigation and shall include labor and materials.

(Plus $125.00 for breaking pavement)

Lease Rate

6" fire flow connection          $86.00    per year
8" fire flow connection          $174.00   per year
10" fire flow connection        $296.00   per year
12" fire flow connection        $464.00   per year

PASSED, APPROVED and ADOPTED this 17th day of April, 2007.

_____
MAYOR

_____

_____
MEMBERS OF THE CITY COUNCIL OF THE CITY OF PHENIX CITY, ALABAMA

ATTEST:

_____
CITY CLERK

Blumberg No. 5118    EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HARD-ING BUILDERS, LLC; | § | |
| VISION QUALITY HOMEBUILDERS, | § | |
| LLC; VISION QUALITY HOMES, | § | |
| LLC; et al., | § | |
| | § | |
| Plaintiffs, | § | 3:07-cv-1069-MEF |
| | § | |
| v. | § | |
| | § | |
| CITY OF PHENIX CITY, ALABAMA, | § | |
| a Municipal Corporation, | § | |
| | § | |
| Defendant. | § | |

### AFFIDAVIT OF STEPHEN SMITH

STATE OF ALABAMA   )
COUNTY OF _At Large_  )

**BEFORE ME,** _Stephanie Chastain_, a notary public in and for said County and State, personally appeared **STEPHEN SMITH**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Stephen Smith. I serve as Director of Finance for the City of Phenix City, Alabama and I have served in that capacity for five and a half years. Prior to working for the City of Phenix City, I worked for 21 years as Director of Finance for the City of Bartlett, Tennessee.

In my capacity as Director of Finance, I am familiar with the sewer tap fees charged to contractors, developers and builders applying for residential or commercial building permits in the City of Phenix City, and how said fees were collected, deposited, accounted for and spent.

EXHIBIT
C

The Department of Public Utilities of the City of Phenix City is a completely separate entity with funds separate from the City. Sewer tap fees are, thus, separately accounted for. The Department is self-supporting, meaning that it is funded by water and sewer fees collected from its customers or by revenue bonds which have been issued for capital improvements. The Department is not funded by public tax revenues. The Utility Department is currently taxed by the City of Phenix City just like every other utility which operates within the City.

Prior to April 17, 2007, the sewer tap fee at issue was charged uniformly to all builders, developers or contractors who constructed new buildings and, in so doing, caused new sewer lines to be added to the existing system.

All of the monies received as sewer tap fees were deposited into the Department's bank account, not into the City's bank account. None of the funds collected by the Department were co-mingled with funds of the City of Phenix City and none of the Department's funds were used for other City operations. The Utility Department has its own employees and its own manager and is treated as a separate enterprise."

Further affiant sayeth not.

_____
STEPHEN SMITH

2

STATE OF ALABAMA       )
COUNTY OF _At Large_      )

     I, _Stephanie Chastain_ , a Notary Public in and for said State and County, hereby certify that **STEPHEN SMITH** being known to me and who being duly sworn, and whose name is signed to the foregoing document, acknowledged ~~before me~~ ~~that~~ ~~being~~ ~~informed~~ ~~of~~ ~~the~~ ~~purpose~~ ~~and~~ ~~effect,~~ voluntarily executed the same upon the above-stated date.

     SWORN TO and SUBSCRIBED BEFORE ME on this the 11th day of _February_ , 2008.

                             _Stephanie Chastain_
                             NOTARY PUBLIC
                             My Commission Expires: MY COMMISSION EXPIRES AUG. 23, 2011

(NOTARIAL SEAL)

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HARD-ING BUILDERS, LLC;<br>VISION QUALITY HOMEBUILDERS,<br>LLC; VISION QUALITY HOMES,<br>LLC; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PHENIX CITY, ALABAMA,<br>a Municipal Corporation,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 3:07-cv-1069-MEF |

## AFFIDAVIT OF GREG GLASS

STATE OF ALABAMA   )
COUNTY OF _RUSSELL_   )

BEFORE ME, _BEVERLY A. MILLS_, a notary public in and for said County and State, personally appeared **GREG GLASS,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Greg Glass. I serve as Director of the Department of Public Utilities of the City of Phenix City, Alabama. In my capacity as Director, I am familiar with the sewer tap fees which were charged to all contractors, developers and builders applying for residential or commercial building permits in the City of Phenix City.

The Department incurs costs when an additional sewer line is added to the existing system. Specifically, before a new lateral line is accepted by the Department, the Department uses its own cameras and crew to inspect the connection between the distribution line and the lateral line to ensure there are no blockages, trash or other



EXHIBIT
D

impediments. Moreover, the Department is responsible for conducting maintenance with regard to lines that have been damaged, vandalized or improperly installed. The Department attempted to recoup/defray some of its inspection and maintenance costs through implementation of a "sewer tap fee."

The Department of Public Utilities serves customers both within and without the city limits of the City of Phenix City and within and without the City's police jurisdiction.

On April 17, 2007, as an accommodation to contractors, developers and builders, the City repealed the sewer tap fee in cases where pre-stubbed taps or connections have been made by the contractor, developer or builder. The Department continues to incur costs, however, associated with the inspection and maintenance of the lines."

Further affiant sayeth not.

GREG GLASS

2

STATE OF ALABAMA            )
COUNTY OF __RUSSELL__       )

I, __BEVERLY A. MILLS_____, a Notary Public in and for said State and County, hereby certify that **GREG GLASS** being known to me and who being duly sworn, and whose name is signed to the foregoing document, acknowledged before me on this date that being first informed of the contents of said document, having read the same, and understanding its purpose and effect, voluntarily executed the same upon the above-stated date.

SWORN TO and SUBSCRIBED BEFORE ME on this the __12th__ day of __FEBRUARY_____, 2008.

_____
NOTARY PUBLIC
My Commission Expires:_____
MY COMMISSION EXPIRES SEPT. 23, 2008

(NOTARIAL SEAL)

3