IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **HARD-ING BUILDERS**, LLC, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 3:07-cv-01069-MEF-WC |
| ) | |
| **THE CITY OF PHENIX CITY,** ) | |
| **ALABAMA, a Municipal Corporation,** ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO MOTION TO REMAND

Pursuant to the Court's Order (Doc. # 50), the plaintiffs reply to the City of Phenix City's (the "City") Response to Motion to Remand as follows:

**I.   THE COURT SHOULD REMAND THIS ACTION TO STATE COURT BECAUSE THE CITY HAS NOT MET ITS BURDEN OF PROVING FEDERAL JURISDICTION.**

The plaintiffs demonstrated in their Motion to Remand that this action should be remanded to state court pursuant to the Tax Injunction Act, 28 U.S.C. § 1341, because their Complaint alleges, in part, that the purported regulatory "sewer tap fee" charged by the City is in reality an invalid tax.  The City responds to the remand request by urging the Court to determine that (1) the "sewer tap fee" is not a tax because it is collected by the Department of Public Utilities for the City (the "Department") and the revenue derived from the fee does not go into the City's general fund, and (2) the revenue collected from the "sewer tap fee" is used to offset costs associated with the Department's inspections of sewer tap connections performed by the builders.  Neither of these grounds (discussed in reverse order below) is sufficient to preclude the remand of this action.

189840.1

**1. The City's claim that the "sewer tap fee" is legitimate because it was collected to offset the costs of inspections performed by the Department is disingenuous.**

To understand the fallacy in the City's claim that the sewer tap fee is legitimate as a measure to recoup the costs of inspections performed by the Department, it is necessary to understand the history of the City's enactment of the "sewer tap fee." No one will dispute that when the "sewer tap fee" was originally enacted, the City - and not the builder - was responsible for doing the actual physical connections of new lines into the existing sewer system.[1] In undertaking this task, the City necessarily incurred labor and material expenses; consequently, it was not inappropriate for the City to collect a "sewer tap fee" to allow it to recoup these expenses. Accordingly, the City enacted an ordinance authorizing the "sewer tap fee," which provided in its most recent enactment (prior to its repeal, in part, by Ordinance 2007-19) as follows:

> b) Sewer Tap Fees:
>
> 4" diameter         $500.00
>
> All other taps will be based on the size of the water meter.
>
> 1" diameter         $750.00
> 1½" diameter       $1,000.00
> 2" diameter         $2,000.00

*See* Ordinance 2006-26.[2]

---

[1] It is not known for certain when the "sewer tap fee" was first instituted by the City, but it is believed that the first ordinance authorizing the fee was enacted in the early 1980s.

[2] Since it is believed that the "sewer tap fee" was first instituted in the early 1980s, it is obvious that Ordinance 2006-26, enacted in 2006, was not the first ordinance authorizing the fee. The plaintiffs do not presently have a copy of the first ordinance authorizing the fee. Ordinance 2006-26 is included here, however, because it represents the most recent enactment of the ordinance prior its repeal, in part, by Ordinance 2007-19.

At some point after the ordinance authorizing the sewer tap fee was enacted, however, the City stopped making connections of new lines into the existing sewer system in most circumstances. Instead, the builder became responsible for this activity. Importantly, even though the City stopped doing the physical sewer tap connection, it continued to charge the builder a "sewer tap fee" for each line connection made. Thus, the builders became responsible for both the costs and expenses associated with connecting a new line into the sewer system <u>and</u> paying the "sewer tap fee" to the City for work the builders themselves had performed.

The City now attempts to justify the "sewer tap fee" by claiming that it is designed to recoup costs incurred by the City in "inspecting" new additions to the sewer system. This is a curious argument for several reasons. To begin, nowhere in Ordinance No. 2006-26 does it say that the "sewer tap fee" is related in any way to "inspections" performed by the City. The ordinance is clear that its sole purpose is to authorize a fee to be assessed against a builder when a sewer tap connection is made by the City.

It is also important when assessing the validity of the purported "sewer tap fee" to understand that, in addition to the "sewer tap fee," the City also assesses a System Development Fee (also known as an "impact" fee) to a builder when a new connection is made into the sewer line. This fee is generally $1,750.00 for each new connection. Thus, the City cannot legitimately argue that the "sewer tap fee" was anything other than a means for the City to recoup its labor and material costs when the City made a new connection into the existing sewer line.

Finally, perhaps the best evidence that the City has been unlawfully charging builders the "sewer tap fee" is the City's reaction when informed that builders were still being charged a "sewer tap fee" even though the City was no longer doing the actual physical connections into

the sewer line. When so confronted, the City almost immediately repealed the "sewer tap fee" through Ordinance No. 2007-19 in situations where the builder was responsible for the sewer tap. Ordinance No. 2007-19 expressly provides, in part, that "[n]o charge shall be assessed against the developer/contractor in areas where pre-stubbed sanitary taps or connections have been made by the developer/connector." Thus, the question is raised, if the sewer tap fee was justified as an "inspection" expense, why was the City so quick to repeal the fee when confronted with evidence that the City was no longer performing the physical sewer tap connection? Along these same lines, is it now to be assumed that the City is performing its "inspection" service for no cost when it previously charged $500.00 and more for this service?

>   2.  **The City's claim that the "sewer tap fee" is protected from classification as a tax because it is collected by the Department and the revenue derived from the fee is not deposited in the City's general fund is spurious.**

The City also argues that the sewer tap fee is protected from classification as a tax because it is collected by the Department and the revenue derived from the fee is not deposited in the City's general fund.

It is well established that the primary purpose of a tax is to raise revenue, while the primary purpose of a regulatory fee is to defray a government's regulation-related expenses. *See, e.g., Miami Herald Pub. Co. v. Hallandale*, 734 F.2d 666 (11th Cir. 1984); *Union Pacific Railroad Co. v. Public Utility Comm.*, 899 F.2d 854, 856 (9th Cir. 1990). As discussed above, however, the "sewer tap fee" was assessed to the builders for no valid regulatory purpose. Thus, it can be considered *nothing other than a revenue raising measure*, whether collected by the "City of Phenix City" or some "department" thereof and regardless of where the funds are deposited. *See Lightwave Technologies, L.L.C. v. Escambia County, Alabama*, 43 F. Supp. 2d 1311, 1314-16 (S.D. Ala. 1999) (when determining whether a purported regulatory fee is a tax, a

relevant factor is whether the fee is tailored to the actual burden imposed on the governmental entity by the plaintiffs' activities).

      **3.    This action should be remanded because the City has not met its burden of proving that federal jurisdiction is "absolutely clear."**

The Court should decline the City's invitation to resolve the "tax/fee" issue at this stage of the litigation. It is not necessary for this Court to actually decide that issue to conclude that remand is appropriate. This is so because "any doubts regarding the existence of a federal question [are to be resolved] in favor of the non-removing party." *Pacheco de Parez v. AT&T*, 139 F.3d 1368, 1373 (11th Cir. 1998); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand"). Indeed, "the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear." *Newman v. Spectrum Stores, Inc.*, 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000).

Here, there is substantial evidence to support the plaintiffs' position that the purported regulatory "sewer tap fee" is in reality a tax. It necessarily follows that it is <u>not</u> clear that the "sewer tap fee" is <u>not</u> a tax in disguise. Accordingly, this Court's jurisdiction is not "absolutely clear," and pursuant to established law in the Eleventh Circuit, this action should be remanded to state court for further proceedings.[3]

---

[3] The plaintiffs renew their request for this Court to exercise its discretion to remand this entire action since state law claims clearly predominate in this case. *See, e.g., Wirtz Corp. v. United Distillers v. Vintners North America, Inc.*, 224 F.3d 708, 731 (7th Cir. 2000) (state interest in administration of alcoholic beverage program outweighs diversity jurisdiction); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320 (5th Cir. 1998) (permitting remand of federal claims within concurrent jurisdiction of federal and state courts); *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 320 (5th Cir. 1998) (collecting cases).

**II.    IN THE ALTERNATIVE, IF THE COURT IS INCLINED TO RESOLVE THE "TAX/FEE" ISSUE BEFORE RULING ON PLAINTIFFS' REMAND REQUEST, IT SHOULD WITHHOLD A DECISION UNTIL THE PLAINTIFFS HAVE HAD TIME TO CONDUCT NECESSARY DISCOVERY.**

As stated above, the plaintiffs believe this action should be remanded now to state court because the City has not met its burden of proving that federal jurisdiction is "absolutely clear." If this Court is nevertheless inclined to allow this action to go forward here, and to resolve the "tax/fee" issue before finally ruling on the plaintiffs' remand request, the plaintiffs should be given time to conduct necessary discovery on this issue. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-27 (1st Cir. 2001) (a district court has discretion to allow jurisdictional discovery); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (holding the same).

The "tax/fee" issue is central to this case, and should be not be conclusively decided based on an incomplete record. The plaintiffs have had no opportunity to conduct discovery at this stage of the litigation. Thus, at a minimum, the plaintiffs should be given the opportunity to conduct discovery on the "tax/fee" issue, and to present additional evidence to the Court secured through discovery, before this issue is conclusively resolved. The plaintiffs suggest that, should the Court proceed in this fashion, the scheduling order set a deadline for jurisdictional discovery, following which plaintiffs may bring the remand issue back to the Court's attention.

/s/ G. Lane Knight
David R. Boyd
G. Lane Knight
Attorneys for Plaintiffs
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 783-2739
E-mail: dboyd@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 19th day of February, 2008:

Ronald G. Davenport
R. Brett Garrett
Rushton, Stakely, Johnston & Garrett, P.A.
184 Commerce Street
Montgomery, AL 36104

*Attorneys for Defendant*

Respectfully submitted,

/s/ G. Lane Knight
David R. Boyd (BOY005)
G. Lane Knight (KNI028)
Attorneys for Plaintiffs
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 783-2739
E-mail: dboyd@balch.com
         lknight@balch.com